## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  18-CR-20946-GAYLES

UNITED STATES OF AMERICA

v.

ULYSSES CABRERA, et al.
      a/k/a "ULEY,"
      a/k/a "Big Cuz,"

        Defendant.

_____/

FILED by ___ D.C.

DEC 13 2018

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

### <u>UNITED STATES' OMNIBUS MOTION TO SEEK PRE-TRIAL DETENTION</u>

      The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Omnibus Motion to Seek Pretrial Detention, informing the Court, pursuant to Title 18, United States Code, Section 3142(f), of the basis which it will seek to detain Defendants Ulysses Cabrera, ("CABRERA"), Bernardo Quinonez, ("B. QUINONEZ"), Rafael Quinonez, ("R. QUINONEZ"), Henry Feliciano-Torres, ("FELICIANO-TORRES"), Daniel Quinonez, ("D. QUINONEZ"), Marvin Melendez-Reyes, ("MELENDEZ-REYES"), Victor Smith, ("SMITH"), Hector Salgado, ("SALGADO"), Issac Leal, ("LEAL") Rogelio Ramos, ("RAMOS"), Peter Simo, ("SIMO"),  Miguel Haber, ("HABER"), Gilbert Cruz Baez, ("BAEZ"), and Alain Terry, ("TERRY"), prior to trial.

      In support thereof, the undersigned relies upon the following:

### <u>ARRESTS</u>

      In the early morning hours of December 13, 2018, members of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Miami-Dade Police Department, and United States

Marshals Services arrested 19 members of a Little Havana violent drug trafficking organization and seized ammunition, a firearm, and pounds of suspected marijuana and cocaine.[1]

## REBUTTABLE PRESUMPTION FOR DETENTION

There is a rebuttable presumption of pretrial detention in this case based upon the charges alleged in the indictment.  In certain cases, a rebuttable presumption applies that no condition or combination of conditions will reasonably assure the appearance of the person as required and assure the safety of the community.  *See* 18 U.S.C. § 3142(e)(3).  The presumption imposes upon the defendant the burden of production to come forward with evidence suggesting that he is neither a danger to the community nor a risk of flight.  If the defendant fails to rebut either part of the statutory presumption, then pretrial detention is warranted.  *See King*, 849 F.2d at 488; *United States v. Allen*, 891 F. Supp. 594, 597 (S.D. Fla. 1995).

The presumption is triggered upon the charging of Title 21 offenses, which carry with it a maximum penalty of 10 years imprisonment or upon the charging of Title 18, United States Code, Section 924(c) offenses, which carry with it a maximum penalty of life imprisonment.  The instant indictment charges the defendants with both Title 21 and 924(c) offenses.

## INDICTMENT

On December 6, 2018, a Grand Jury sitting in the Southern District of Florida returned an Indictment against 24 individuals, including the above mentioned defendants.  (DE 1)

**CABRERA**

It is alleged that CABRERA lead and supplied cocaine to a violent drug trafficking

---

[1] On December 12, 2018, co-defendant Peter Rodriguez was observed on surveillance video carrying a garbage bag into the Miami Gardens home where B. QUINONEZ and R. QUINONEZ were arrested.  On December 13, 2018, the same garbage bag was located inside the Miami Gardens home, and inside the garbage bag was marijuana.  On December 13, 2018, co-defendant Rodriguez was arrested and 8 boxes of marijuana was seized from his home, during his arrest.  The Government will seek pre-trial detention for Rodriguez based upon the evidence discovered at the time of his arrest.

organization, ("DTO") operating in Little Havana and laundered proceeds of drug trafficking from the DTO while collecting disability income from the Social Security Administration.

The indictment charges CABRERA with continuing a criminal enterprise, in violation of Title 21, United States Code, Section 848; conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(o);  conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h); drive-by shooting, in violation of Title 18, United States Code, Section 36; brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); maintaining an establishment for distribution of controlled substances, in violation of Title 21, United States Code, Section 856(a)(1); money laundering, in violation of Title 18, United States Code, 1957; and possession of cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841.

## B. QUINONEZ

It is alleged that B. QUINONEZ organized and supervised the street distribution and violent retaliatory operations for the DTO, specifically, B. QUINONEZ led retaliatory drive-by shootings that resulted in the shooting of a 13-year old in Little Havana.

The indictment charges B. QUINONEZ with continuing a criminal enterprise, in violation of Title 21, United States Code, Section 848; conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States

Code, Section 924(o);  conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h); drive-by shooting, in violation of Title 18, United States Code, Section 36; brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i);  maintaining an establishment for distribution of controlled substances, in violation of Title 21, United States Code, Section 856(a)(1); money laundering, in violation of Title 18, United States Code, 1957;  and possession of cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841.

**R. QUINONEZ**

It is alleged that R. QUINONEZ purchased and distributed marijuana and cocaine on behalf of the DTO at the direction of B. QUINONEZ and CABRERA and further directed and supervised other members of the DTO as directed by B. QUINONEZ and CABRERA.

The indictment charges R. QUINONEZ with conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(o);  drive-by shooting, in violation of Title 18, United States Code, Section 36; brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); maintaining an establishment for distribution of controlled substances, in violation of Title 21, United States Code, Section 856(a)(1); and possession of cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841.

4

**FELICIANO-TORRES**

It is alleged that FELICIANO-TORRES purchased and distributed crack cocaine on behalf of the DTO at the direction of B. QUINONEZ and further directed and supervised other members of the DTO as directed by B. QUINONEZ and CABRERA.

The indictment charges FELICIANO-TORRES conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(o);  drive-by shooting, in violation of Title 18, United States Code, Section 36; brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); and possession of crack cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841.

**D. QUINONEZ**

It is alleged that D. QUINONEZ purchased and distributed cocaine and crack cocaine on behalf of the DTO at the direction of B. QUINONEZ and further directed and supervised other members of the DTO as directed by B. QUINONEZ and CABRERA.

The indictment charges D. QUINONEZ with conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(o);  drive-by shooting, in violation of Title 18, United States Code, Section 36; brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); possession of a firearm in furtherance of a

drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); and possession of crack cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841.

## M. MELENDEZ-REYES

It is alleged that M. MELENDEZ-REYEZ distributed marijuana and possessed firearms for the purpose of protecting the DTO, at the direction of B. QUINONEZ and CABRERA.

The indictment charges M. MELENDEZ-REYES conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(o);  drive-by shooting, in violation of Title 18, United States Code, Section 36; brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); and possession of a firearm and ammunition by a convicted felon, in violation of 922(g)(1).

## SMITH

It is alleged that SMITH purchased and distributed crack cocaine on behalf of the DTO at the direction of B. QUINONEZ and further directed and supervised other members of the DTO as directed by B. QUINONEZ and CABRERA.

The indictment charges SMITH with conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(o);  drive-by shooting, in violation of Title 18, United States Code, Section 36;

6

brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); maintaining an establishment for distribution of controlled substances, in violation of Title 21, United States Code, Section 856(a)(1); possession of cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841; and Hobbs act robbery, in violation of Title 18, United States Code, Section 1951(a).

**SALGADO**

It is alleged that SALGADO committed a Hobbs Act Robbery with SMITH, who is a member of the DTO.

The indictment charges SALGADO with Hobbs Act Robbery, in violation of Title 18, United States Code, Section 1951(a); and brandishing and discharging a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

**LEAL**

It is alleged that LEAL distributed crack cocaine and possessed firearms for the purpose of protecting the DTO, at the direction of B. QUINONEZ and CABRERA.

The indictment charges LEAL with conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(o); drive-by shooting, in violation of Title 18, United States Code, Section 36; brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); possession of a firearm and ammunition by a convicted felon, in violation of 922(g)(1); and possession of a firearm in furtherance of a drug

trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

**RAMOS**

It is alleged that RAMOS purchased and distributed crack cocaine on behalf of the DTO at the direction of B. QUINONEZ and CABRERA.

The indictment charges RAMOS with conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(o);  drive-by shooting, in violation of Title 18, United States Code, Section 36; brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); possession of crack cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841; and possession of a firearm and ammunition by an unlawful alien, in violation of 922(g)(5)(B).

**SIMO**

It is alleged that SIMO purchased and distributed crack cocaine on behalf of the DTO at the direction of B. QUINONEZ and CABRERA.

The indictment charges SIMO with conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(o);  drive-by shooting, in violation of Title 18, United States Code, Section 36; brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); possession of a firearm in furtherance of a

drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); possession of crack cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841; and possession of a firearm and ammunition by a convicted felon, in violation of 922(g)(1).

**HABER**

It is alleged that HABER maintained a drug distribution location for the DTO and distributed marijuana from that location at the direction of CABRERA and B. QUINONEZ.

The indictment charges HABER with conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(o); drive-by shooting, in violation of Title 18, United States Code, Section 36; brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); and maintaining an establishment for distribution of controlled substances, in violation of Title 21, United States Code, Section 856(a)(1);

**BAEZ**

It is alleged that BAEZ used to sell controlled substances for B. QUINONEZ and CABRERA, but left the DTO and now has committed drive-by shootings in an attempt to take-over the DTO.

The indictment charges BAEZ with conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States

Code, Section 924(o);  drive-by shooting, in violation of Title 18, United States Code, Section 36; and brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

**TERRY**

It is alleged that TERRY used to sell controlled substances for B. QUINONEZ and CABRERA but has now has joined BAEZ in an attempt to take-over the DTO.

The indictment charges TERRY with conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(o); drive-by shooting, in violation of Title 18, United States Code, Section 36; brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); and possession of crack cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841.

## **TITLE 21 AND 924 (C) OFFENSES**

In November 2017, a HIDTA task force led by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and the Miami-Dade Police Department Street Terror Offender Program, (hereinafter, referred collectively as "law enforcement"), began a proactive investigation into a Little Havana based drug trafficking organization ("DTO") affiliated with the Almighty Latin King and Queen Nation.  Law enforcement infiltrated the DTO through the usage of confidential informants, Title III Interceptions, and information gathered from current members of the DTO as well as associates of the DTO.

Confidential informants identified CABRERA as being the source of supply for the DTO. CABRERA then identified B. QUINONEZ, also known as "MACHO," as the supervisor of what he called, "M's Crew," the manpower that transformed the cocaine he supplied into crack cocaine and then distributed it onto the streets of Miami, specifically, onto the streets of 10th Avenue and 4th Street, in Little Havana.

B. QUINONEZ' brothers D. QUINONEZ and R. QUINONEZ were also identified by confidential informants as being part of the DTO. Confidential informants have known the QUINONEZ brothers since 2014.

On six (6) different occasions, in the Southern District of Florida, from November 2017 through January 2018, B. QUINONEZ and R. QUINONEZ have sold ounces and quarter kilograms of cocaine to a confidential informant on audio and video recording, in violation of Title 21, United States Code, Section 841(a)(1).

On November 29, 2017, D. QUINONEZ, on audio recording, sold a detectable amount of crack cocaine to a confidential informant in violation of Title 21, United States Code, Section 841(a)(1). Additionally, in April of 2018, during intercepted communications on B. QUINONEZ' phone, D. QUINONEZ was chastised by B. QUINONEZ for quoting too low of a price for an ounce of cocaine. On May 31, 2018, City of Miami Police were conducting a planned narcotics operation at a drug distribution house when D. QUINONEZ arrived at the house with a plastic bag and conducted a hand-to-hand transaction with an occupant inside of the house. D. QUINONEZ left the house with the plastic bag and entered the passenger side of a waiting vehicle and left the area. After a traffic stop, several pieces of crack cocaine were discovered inside of the plastic bag. A search warrant was executed at the house for drug distribution and loose pieces of crack cocaine were recovered inside of the house. When police interviewed the driver of the vehicle, co-

11

defendant Elizabeth Legon, she told police D. QUINONEZ usually buys crack cocaine from the drug distribution location or from 10th Avenue and 4th Street, in violation of Title 21, United States Code 841(a)(1).

D. QUINONEZ, FELICIANO-TORRES, and SMITH are routinely responsible for supervising other M's Crew members who distribute narcotics on 10th Avenue and 4th Street. In a post-*Miranda* statement provided by FELICIANO-TORRES, he stated that no one is allowed to distribute on 10th Avenue and 4th Street, unless the cocaine they are distributing was supplied by the DTO. Law enforcement intercepted FELICIANO-TORRES several times on wire and electronic communications occurring over both B. QUINONEZ' phone as well as over R. QUINONEZ' phone. During each of the communications, FELICIANO-TORRES sought to purchase cocaine or sought clarification on where to meet B. QUINONEZ in order to obtain crack cocaine. For example, on June 1, 2018, law enforcement intercepted FELICIANO-TORRES on wire communications occurring over B. QUINONEZ phone. During intercepted phone conversations, B. QUINONEZ and FELICIANO-TORRES agreed to meet in order to conduct a drug transaction at a Brickell area parking lot. Law enforcement watched as B. QUINONEZ' car arrived in the parking lot. Law enforcement saw SMITH in the front passenger seat and B. QUINONEZ in the driver seat. SMITH conducted one deal from the passenger seat with one buyer, and B. QUINONEZ conducted his deal with FELICIANO-TORRES from the driver seat, in violation of Title 21, United States Code, Section 846. The transaction was captured on the parking lot surveillance video.

On July 18, 2018, SMITH sold two (2) ounces of cocaine to a confidential informant, in violation of Title 21, United States Code, Section 841(a)(1). The sale was captured on audio and video recording. Prior to the sale of cocaine, SMITH was involved in a Hobbs Act Robbery with

SALGADO, during which SALGADO brandished and discharged a firearm, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

Firearms for members of the DTO is not uncommon.  On May 9, 2018, CABRERA was recorded telling a confidential informant "I always got my fire on me."

CABRERA and B. QUINONEZ routinely unleashed armed members of their DTO to intimidate, maim, and in some instances kill rivals, to further the image of the DTO.  The result was often innocent citizens becoming the victims.  "Smackers," was the term used by the DTO to reference other members who did whatever violent acts CABRERA and B. QUINONEZ ordered. LEAL, FELICIANO-TORRES, SMITH, and MELENDEZ-REYES have all been identified as smackers.

Each member of the conspiracy who possessed firearms or knew or had reason to know firearms were being possessed by members of the DTO has been charged in the Indictment with possession of firearms in furtherance of drug trafficking crimes, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) and are being held liable under *Pinkerton* liability.

In June 2017, BAEZ was arrested on 10th Avenue and 4th Street.  Shortly after his arrest, BAEZ left the DTO.  In a recorded conversation with a confidential informant, B. QUINONEZ stated he used to supply BAEZ with drugs to sell but B. QUINONEZ stopped supplying BAEZ. On October 30, 2017, BAEZ shot B. QUINONEZ, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).  When police interviewed B. QUINONEZ at the hospital, he told police he was shot in Overtown.  According to B. QUINONEZ, in a recorded conversation with the confidential informant, he said he lied to police to throw them off and said he sent his crew to retaliate repeatedly "until a little kid got his toes blown off." Law enforcement was able to confirm the retaliatory shootings.  In particular, law enforcement was able to confirm a 13-year old boy

was shot in the arm and left foot on November 6, 2017.  On the recording, B. QUINONEZ also talked in great detail about the last shooting: "But the last time they got hit my dog came through with a stick and started hitting.  You know that shit went through the walls through this house and came out through the other house and hit the kid in the foot that was sleeping, you get what I'm saying. But, whatever, I don't give a fuck.  Ain't nobody tell them to move right there next to these kids that got pressure with me, you feel me?"  As the conversation continued, B. QUINONEZ stated he didn't know the real reason BAEZ shot him but, "I got shot and it's not going to stop until that nigga drop and his whole team, all them nigga's gotta get it."  B. QUINONEZ further explained that members of BAEZ' team were driving around the "4," a reference to 10th Avenue and 4th Street, and scaring his "workers." The DTO's actions, as directed by B. QUINONEZ, and foreseeable to CABRERA, R. QUINONEZ, FELICIANO-TORRES, D. QUINONEZ, MELENDEZ-REYES, SMITH, LEAL, RAMOS, SIMO, and HABER, led to "C.T.'s," injuries, in violation of Title 18, United States Code 924 (c)(1)(A)(iii).

In March of 2018, law enforcement identified one of HABER's residences as a distribution location for marijuana.  A subsequent search warrant at that location revealed marijuana, a firearm, ammunition, documents and photographs depicting HABER's name and face.

On March 24, 2018, video shows CABRERA and other members of the DTO arguing with another group inside of a local strip club.  CABRERA was walked out of the club by the bouncer. Video surveillance from the club's parking lot area shows CABRERA entering the front driver side of his vehicle and MELENDEZ-REYES entering the front passenger side of the vehicle. According to the bouncer, CABRERA handed MELENDEZ-REYES an assault rifle and said "spray this place up."  On the video, you can see the bouncer lean inside the front passenger window, and then a spark of fire from the front passenger window.  Moments later, the bouncer

retreats from the vehicle, crouched down, holding an assault rifle. According to the bouncer, the weapon fired in the struggle with MELENDEZ-REYES. When CABRERA recounted the story in a recorded conversation to a confidential informant, CABRERA defended having an assault rifle in his car: "I live a different life than other people, I've been shot before that's how I ride…I sell dope dog you feel me, that's my worries…." CABRERA proceeded to read the police report to the confidential informant. CABRERA failed to surrender to police for questioning.

On April 3, 2018, local police arrested LEAL for driving in a stolen vehicle. B. QUINONEZ arranged to have LEAL bonded out of jail. On April 13, 2018, a phone conversation between B. QUINONEZ and LEAL was intercepted by law enforcement. During the call, B. QUINONEZ asked LEAL where was the vehicle he was arrested in and if the "thing," was still there. LEAL responded that the tow-yard location should be on his arrest form but reassured B. QUINONEZ, "nobody can find it." On April 14, 2018, law enforcement searched the vehicle LEAL was arrested in and located a loaded AK-47 firearm in the trunk of the vehicle. On June 8, 2018, while law enforcement were intercepting wire communication occurring over B. QUINONEZ' phone, SIMO was speaking to B. QUINONEZ on the phone. During the phone conversation, SIMO handed the phone to LEAL. LEAL began to tell QUINONEZ that the person B. QUINONEZ asked him to "handle" was on 8th Avenue and 3rd Street. LEAL told B. QUINONEZ that he was looking for a "toolie." "Toolie," is slang for firearm. In response to that phone call and based on witness interviews, law enforcement believed LEAL was confirming a hit and saturated the area with marked police units.

Throughout the investigation, law enforcement attempted to purchase firearms from the DTO, however, according to R. QUINONEZ, the DTO was at war and all of their weapons were needed. In May 2018, R. QUINONEZ introduced MELENDEZ-REYES to a confidential

15

informant and told the confidential informant that MELENDEZ-REYES would take care of whatever the confidential informant needed. MELENDEZ-REYES told the confidential informant that all he needed was $5,000.00 and a picture. On May 5, 2018, in a recorded conversation with the confidential informant, R. QUINONEZ vouched for MELENDEZ-REYES' reliability and stated, "it ain't his first rodeo."

On June 10, 2018, and June 11, 2018, law enforcement intercepted wire communications on MELENDEZ-REYES phone in which MELENDEZ-REYES attempted to confirm a murder for hire for $5,000.00. After failed attempts to warn the intended target, law enforcement confronted MELENDEZ-REYES. On June 11, 2018, after law enforcement left his apartment, MELENDEZ-REYES called CABRERA in a panic to advise him that City of Miami PoliceHomicide Detectives had just left his house and that he had to leave his apartment. MELENDEZ-REYES was arrested when he left his apartment with a firearm, extended magazines, and ammunition, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

By July 2018, BAEZ and TERRY, both former members of the DTO, were now rivals of the DTO. On July 27, 2018, BAEZ and TERRY were present inside of a silver Nissan Armada. Witnesses have identified BAEZ as having exited the passenger side of a silver Nissan Armada and firing a gun at FELICIANO-TORRES, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii). The shooting of the firearm injured the other individual. On August 1, 2018, TERRY was arrested for possession of a firearm by a convicted felon, for which he is now in State custody. The firearm TERRY was in possession of on August 1, 2018, is the same firearm that fired casings found on the scene of two shootings that occurred on July 27, 2018.

SIMO is a convicted felon and RAMOS is currently under an order of deportation.

On September 13, 3018, a search warrant was executed at another house utilized by the DTO.  At the time the search warrant was executed, RAMOS and SIMO were inside of a house packaging crack cocaine.  On the table where both men were seated was crack cocaine, a blade, a plate, a revolver, and a semiautomatic firearm loaded with a hundred round drum magazine, in violation of Title 21, United States Code, Section 841(a)(1); and in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## ADDITIONAL CONSIDERATIONS FOR DETENTION

**Criminal History**

Each defendant has a criminal history and has had significant contacts with the criminal justice system since juvenile justice.  As will be outlined in the pretrial services report, a number of their arrests have been "no actioned" or "nolle prossed" in the local state system.  A more complete picture of each defendant's criminal make-up will be provided by pretrial services but a brief glimpse is provided below:

In 2012, B. QUINONEZ was released from Department of Corrections after a six (6) year prison sentence for armed carjacking and attempted felony murder.  In 2015, LEAL was released from Department of Corrections after a six (6) year prison sentence for armed robbery.  In July 2017, FELICIANO-TORRES, was released from State custody after serving a year and a day for four (4) burglary and grand theft charges. He is currently on probation until 2019.  In 2017, CABRERA plead guilty to sale of marijuana.  TERRY is a Habitual Violent Offender who is currently on probation for armed robbery and battery on law enforcement offenses in Miami-Dade County.  HABER has previously served two (2) years in prison for trafficking in MDMA.  He was released in 2009.  MELENDEZ-REYES, GONZALEZ, SIMO, and RAMOS all have open drug cases pending in the Miami-Dade County Criminal Justice system.

**Potential Sentence**

Both CABRERA and B. QUINONEZ, if convicted of continuing a criminal enterprise, in violation of Title 21, United States Code, 848 (count 1), will face a maximum sentence of life imprisonment with a 20 year minimum mandatory sentence.

If convicted of possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) (counts 34 and 35), CABRERA and B. QUINONEZ face a maximum sentence of life imprisonment with a five (5) year minimum mandatory sentence.

For the brandishing and discharging a firearm in furtherance of drug trafficking crimes in counts 12, 14, and 17 of the indictment, CABRERA and B. QUINONEZ face up to life imprisonment, but also must serve consecutive minimum mandatory sentences, which must run consecutive to each other, as well as to any other sentence they may receive; thus a conviction as to each brandishing and discharge count must result in a minimum mandatory sentence of 60 years.

Therefore, if convicted on just 6 out of the 22 counts, CABRERA and B. QUINONEZ face a minimum mandatory sentence of 90 years in custody.

If convicted of just counts 2, 12, 14, and 17, which are the conspiracy to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; and brandishing and discharging a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii) counts, Defendants R. QUINONEZ, FELICIANO-TORRES, D. QUINONEZ, MELENDEZ-REYES, SMITH, LEAL, RAMOS, SIMO, HABER, and TERRY face a minimum mandatory 65 years consecutive to any other guideline sentence they may receive.

BAEZ faces a consecutive minimum mandatory 35 years to any other guideline sentence.

## ARGUMENT

Pursuant to Title 18, United States Code, Section 3142(e), the Court must order pretrial detention of a defendant if no conditions on the defendant's release will reasonably assure the appearance of the defendant or the safety of the community. *See* 18 U.S.C. § 3142(c).

Here, a Grand Jury sitting in the Southern District of Florida has determined there is probable cause to believe that the defendants have committed violations of Title 21, United States Code, Sections 848, 846, and 841; and Title 18 United States Code, Section and 924(c). As such, a rebuttable presumption that the defendants pose a risk of danger to the community and a risk of flight or nonappearance applies. *See* 18 U.S.C. §§ 3142(e)(3)(A) (an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act) & 3142(e)(3)(B) (an offense under section 924(c)). In this case, the defendants cannot overcome this presumption.

Even if there were no presumption, clear and convincing evidence establishes that the defendants are a danger to the community. First, the defendants have been continually involved with the criminal justice system and have engaged in a drug and violent criminal activity. Of particular relevance to the Court's analysis regarding danger to the community is the usage of firearms and the knowledge of the usage of firearms on behalf of the DTO by each of the defendants.

The government makes its argument without the aid of a pretrial services report, and would respectfully request the opportunity to make further argument at the detention hearing as it relates to relevant factors revealed by the pretrial services report as it may relate to prior arrest, failure to appear, and other continuing criminal offenses the defendants may have committed while under a

court's supervision, which may present a preponderance of the evidence reason as to why the defendants present a risk of flight.

Based on the foregoing, the United States requests Defendants CABRERA, B. QUINONEZ, R. QUINONEZ, FELICIANO-TORRES, D. QUINONEZ, MELENDEZ-REYES, SMITH, SALGADO, LEAL, RAMOS, SIMO, HABER, BAEZ, and TERRY, be detained without bond;  Defendants CABRERA, B. QUINONEZ, R. QUINONEZ, FELICIANO-TORRES, D. QUINONEZ, MELENDEZ-REYES, SMITH, SALGADO, LEAL, RAMOS, SIMO, HABER, BAEZ, and TERRY, be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal; and Defendants CABRERA, B. QUINONEZ, R. QUINONEZ, FELICIANO-TORRES, D. QUINONEZ, MELENDEZ-REYES, SMITH, SALGADO, LEAL, RAMOS, SIMO, HABER, BAEZ, and TERRY, be afforded reasonable opportunity for private consultation with their counsel; and on order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the defendants are confined, deliver the defendants to a United States Marshal for the purpose of an appearance in connection with court proceedings.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:  */s/ Breezye Telfair*
Breezye Telfair
Assistant United States Attorney
Fla Bar No. 18055
11200 NW 20th Street, Suite 101
Miami, Florida 33172
Tel: (305) 715-7644
Fax: (305) 715-7639
breezye.telfair@usdoj.gov

20

court's supervision, which may present a preponderance of the evidence reason as to why the defendants present a risk of flight.

Based on the foregoing, the United States requests Defendants CABRERA, B. QUINONEZ, R. QUINONEZ, FELICIANO-TORRES, D. QUINONEZ, MELENDEZ-REYES, SMITH, SALGADO, LEAL, RAMOS, SIMO, HABER, BAEZ, and TERRY, be detained without bond; Defendants CABRERA, B. QUINONEZ, R. QUINONEZ, FELICIANO-TORRES, D. QUINONEZ, MELENDEZ-REYES, SMITH, SALGADO, LEAL, RAMOS, SIMO, HABER, BAEZ, and TERRY, be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal; and Defendants CABRERA, B. QUINONEZ, R. QUINONEZ, FELICIANO-TORRES, D. QUINONEZ, MELENDEZ-REYES, SMITH, SALGADO, LEAL, RAMOS, SIMO, HABER, BAEZ, and TERRY, be afforded reasonable opportunity for private consultation with their counsel; and on order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the defendants are confined, deliver the defendants to a United States Marshal for the purpose of an appearance in connection with court proceedings.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: _____
Breezye Telfair
Assistant United States Attorney
Fla Bar No. 18055
11200 NW 20th Street, Suite 101
Miami, Florida 33172
Tel: (305) 715-7644
Fax: (305) 715-7639
breezye.telfair@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2018, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.

Breezye Telfair
Assistant United States Attorney